NIEMEYER, Circuit Judge,
concurring:
I am pleased to concur in Judge Floyd’s well-crafted opinion, especially in light of the existing state of the law regarding when to apply the modified categorical approach. Because of the ever-morphing analysis and the increasingly blurred articulation of applicable standards, we are being asked to decide, without clear and workable standards, whether disjunctive phrases in a criminal law define alternative elements of a crime or alternative means of committing it.
More particularly, in this case, we are called upon to decide whether a wrongful taking and a fraudulent taking are alternative elements defining two versions of the crime of larceny or alternative means of committing larceny. While Judge Floyd concludes that the applicable Virginia law defines alternative means, thereby precluding use of the modified categorical approach under current law, I find it especially difficult to comprehend the distinction. Virginia’s law could just as easily be viewed as prescribing two crimes: (1) larceny by wrongful taking, and (2) larceny by fraudulent taking.*
*201 The Supreme Court’s recent decision in Descamps v. United States, — U.S. -, 133 S.Ct. 2276, 186 L.Ed.2d 438 (2013), which adopted the elements-versus-means distinction, is the source of much of the confusion. In Descamps, the Court held that it was error to apply the modified categorical approach to determine whether a defendant’s prior burglary conviction was for generic burglary when the California statute under which he was convicted prohibited a person from entering specified locations with intent to commit grand or petit larceny or any felony. Id. at 2282. In its discussion, the Court recognized that a hypothetical statute defining burglary as the illegal “entry of an automobile as well as a building” would be divisible, thus justifying application of the modified categorical approach. Id. at 2284 (quoting Taylor v. United States, 495 U.S. 575, 602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990)) (internal quotation marks omitted). It similarly noted that it had previously recognized such divisibility in Nijhawan v. Holder, 557 U.S. 29, 129 S.Ct. 2294, 174 L.Ed.2d 22 (2009). To distinguish those cases and others, however, the Descamps Court explained that “[a]ll those decisions rested on the explicit premise that the laws ‘con-tainted] statutory phrases that cover several different ... crimes,’ not several different methods of committing one offense.” 133 S.Ct. at 2285 n. 2 (quoting Johnson v. United States, 559 U.S. 133, 144, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010)). While the Court acknowledged that the California statute left open the possibility that several means could be employed to commit burglary, some but not all of which would qualify as generic burglary, it dismissed the concern that “distinguishing between ‘alternative elements’ and ‘alternative means’ is difficult,” telling us not “to worry.” Id. The Court elaborated:
Whatever a statute lists (whether elements or means), the documents we approved in Taylor and Shepard ... [will] reflect the crime’s elements. So a court need not parse state law in the way the dissent suggests: When a state law is drafted in the alternative, the court merely resorts to the approved documents and compares the elements revealed there to those of the generic offense.
Id. Respectfully, this purportedly comforting language hardly clarifies. Indeed, in dissent, Justice Alito stated:
While producing very modest benefits at most, the Court’s holding will create several serious problems.... To determine whether a statute contains alternative elements, as opposed to merely alternative means of satisfying an element, a court ... will be required to look beyond the text of the statute, which may be deceptive.... The only way to be sure whether particular items are alternative elements or simply alternative means of satisfying an element may be to find cases concerning the correctness of jury instructions that treat the items one way or the other. And such cases may not arise frequently.
Id. at 2301-02 (Alito, J., dissenting). In Justice Alito’s view, a more practical approach is required.
Similarly, in his separate concurring opinion, Justice Kennedy agreed that “the dichotomy between divisible and indivisible state criminal statutes is not all that clear” and suggested that the Court’s decision would require state legislatures to amend *202 their statutes to meet the Court’s new divisibility requirement. Descamps, 133 S.Ct. at 2293-94 (Kennedy, J., concurring). He indicated that “[t]his is an intrusive demand on the States.” Id. at 2294.
The relevant Virginia conviction for grand larceny in this case could have been obtained either by showing that the defendant wrongfully took property, which Judge Floyd notes would constitute a generic theft conviction, or by showing that the defendant fraudulently took property, which he notes would not constitute generic theft. One would think that whether the defendant was convicted of a wrongful taking or a fraudulent taking could appropriately be resolved by looking at the documents identified in Shepard v. United States, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005). And this seems to have been the approach taken for years before Descamps. Yet Descamps now applies a confusing layer to this analysis that renders this area of the law unsatisfactorily amorphous by limiting the use of Shepard documents to distinguish elements but not means. Judge Floyd’s analysis in this case is thus as good as any.
Were the Supreme Court willing to take another look at this area of law, it might well be persuaded, when focusing on the goals of the categorical approach, to simply allow lower courts to consider Shepard documents in any case where they could assist in determining whether the defendant was convicted of a generic qualifying crime. See, e.g., United States v. Gomez, 690 F.3d 194, 204 (4th Cir.2012) (Niemeyer, J., dissenting) (“In determining what convictions qualify as a sentencing enhancement, courts [should be] authorized to use the modified categorical approach pragmatically whenever the approach yields an answer, in circumstances made ambivalent by an overbroad statute, to whether the prior conviction qualifies as a predicate conviction, so long as the use of the approach avoids ‘subsequent evidentia-ry inquiries in the factual basis for the earlier conviction’ and ‘collateral trials’ ” (quoting Shepard, 544 U.S. at 20, 23, 125 S.Ct. 1254)). It is difficult to find any downside to such a pragmatic approach. Moreover, such an approach would yield the same result here because no Shepard documents were available to show that Omargharib was convicted of a crime that qualifies as generic theft.

 The applicable statute prohibits "simple larceny not from the person of another of goods and chattels of the value of $200 or more,” Va.Code Ann. § 18.2—95(ii), leaving “larceny” *201 to be defined by common law. The Virginia Supreme Court has defined larceny as "the wrongful or fraudulent taking of another’s property without his permission and with the intent to permanently deprive the owner of that property.” Britt v. Commonwealth, 276 Va. 569, 667 S.E.2d 763, 765 (2008) (emphasis added).