COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, AtLee and Athey
Argued at Lexington, Virginia

MARGARET LYNN LINDOW

v.      Record No. 1259-18-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE CLIFFORD L. ATHEY, JR.
NOVEMBER 12, 2019

FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
John T. Cook, Judge

Mark T. Stewart for appellant.

Lauren C. Campbell, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

Margaret Lynn Lindow ("Lindow") was convicted of grand larceny following a bench

trial, in violation of Code § 18.2-95, and sentenced to three years' incarceration with all but nine

months suspended. On appeal, Lindow argues that the trial court erred in finding the evidence

sufficient to support her conviction. Specifically, she contends that the evidence failed to prove

that she intended to deprive Ellen Burks Hannah ("Hannah") of her property. For the following

reasons, we disagree and affirm.

I. FACTUAL BACKGROUND

In February 2017, Lindow was dating Hannah's terminally ill son, Christopher.[1] Lindow

was a regular visitor in the home that Hannah shared with Christopher, sometimes spending the

night with him when Hannah was in the hospital or working. On February 7, 2017, Hannah

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Christopher ultimately passed away from his illness prior to trial.

noticed four pieces of her jewelry, which she testified to having a combined value of $400, were missing from her home.[2] Hannah subsequently found a pawn redemption ticket returnable to Lynchburg Pawn Shop. Upon presenting the pawn redemption ticket at the pawn shop, Hannah was shown her four pieces of missing jewelry. Hannah never retrieved the jewelry from the pawn shop, nor confronted Lindow about the missing jewelry. Instead, Hannah contacted the Campbell County Sheriff's Department to report that her items had been stolen.

On February 28, 2017, Deputy L. Brandon White ("Deputy White") responded to Hannah's report by visiting Hannah at her home. During that visit, Hannah advised Deputy White about the location of her missing jewelry. Later that same day, Deputy White questioned Lindow about the missing jewelry while visiting with Lindow at her home. In response to Deputy White's inquiry, Lindow admitted to Deputy White that she had taken the jewelry and pawned it for gas money to take Christopher to a doctor's appointment. Lindow also stated that she had already retrieved the jewelry from the pawn shop and had placed the jewelry in Hannah's mailbox.

Following the meeting with Lindow, Deputy White immediately returned to Hannah's residence and asked Hannah if she had checked her mailbox recently. Hannah responded that she had not. Deputy White then checked Hannah's mailbox and found the four pieces of missing jewelry which Lindow had placed there.

At trial, Lindow moved to strike at the conclusion of the Commonwealth's case-in-chief. Lindow argued that the Commonwealth failed to prove that she intended to permanently deprive Hannah of the jewelry. The trial court denied Lindow's motion to strike.

---

[2] The instant offense occurred before the effective date of the increase in the statutory threshold amount for grand larceny from $200 to $500. See 2018 Va. Acts, chs. 764, 765 (raising the threshold to $500 effective July 1, 2018). Thus, the $200 statutory threshold applies in this case.

Lindow then testified, alleging additional facts, for the first time, which were inconsistent with the prior statement she had provided to Deputy White. For example, Lindow testified that Christopher brought Lindow the jewelry, which he allegedly borrowed from Hannah, in order for Lindow to pawn the items to buy gas to take him to a doctor's appointment in Richmond. Lindow further testified, for the first time, at trial, that Christopher actually gave her the jewelry at the pawn shop, advising her that Lindow needed to redeem the jewelry from the pawn shop as quickly as possible to return to Hannah. On cross-examination, Lindow acknowledged that her testimony at trial was inconsistent with her prior statement to Deputy White. Additionally, Lindow also admitted during cross-examination that she was a convicted felon.

At the close of all the evidence, Lindow renewed her motion to strike. The trial court found that Lindow's testimony was not credible, in part, because her testimony at trial was inconsistent with her prior statement to Deputy White. Accordingly, the court denied the renewed motion to strike and subsequently convicted Lindow of grand larceny. Lindow appeals from that decision.

## II. ANALYSIS

In a challenge to the sufficiency of the evidence, the Court must "presume the judgment of the trial court to be correct, and 'will not set it aside unless it is plainly wrong or without evidence to support it.'" Davis v. Commonwealth, 39 Va. App. 96, 99 (2002) (quoting Broom v. Broom, 15 Va. App. 497, 504 (1992); Dodge v. Dodge, 2 Va. App. 238, 242 (1986)). The Court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt," but whether "*any* rational trier of fact could have found the essential elements beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (emphasis in original). When reviewing the sufficiency of the evidence to support a conviction, we "consider[] the evidence in the light most favorable to the Commonwealth, the prevailing party

below, and reverse[] the judgment of the trial court only when its decision is plainly wrong or without evidence to support it." Marshall v. Commonwealth, 69 Va. App. 648, 653 (2019). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" Chavez v. Commonwealth, 69 Va. App. 149, 161 (2018) (quoting Banks v. Commonwealth, 67 Va. App. 273, 288 (2017)).

Larceny is defined as "the wrongful or fraudulent taking of another's property without his permission and with the intent to deprive the owner of that property permanently." Tarpley v. Commonwealth, 261 Va. 251, 256 (2001). "Stated simply, larceny requires that there be a taking and asportation of the seized goods, coupled with an intent to steal those goods." Carter v. Commonwealth, 280 Va. 100, 105 (2010) (quoting Britt v. Commonwealth, 276 Va. 569, 575 (2008)).

"'The defendant's intent to steal must exist at the time the seized goods are moved.'" Id. (quoting Britt, 276 Va. at 575). "The element of criminal intent may, and often must, be inferred from the facts and circumstances of the case, including the actions of the defendant and any statements made by him." Tarpley, 261 Va. at 256 (citing Stanley v. Webber, 260 Va. 90, 96 (2000); Commonwealth v. Taylor, 256 Va. 514, 519 (1998)). "In Virginia, absent countervailing evidence of intention otherwise, 'the wrongful taking of the property in itself imports the *animus furandi*.' In other words, the very existence of a trespassory taking permits the inference (unless other circumstances negate it) that the taker intended to steal the property." McEachern v. Commonwealth, 52 Va. App. 679, 685 (2008) (citations omitted). "In determining intent, 'the factfinder may consider the conduct of the person involved and all circumstances revealed by the evidence.'" Id. at 684 (quoting Welch v. Commonwealth, 15 Va. App. 518, 524 (1992)).

In this case, the evidence adduced at trial demonstrated that Lindow took the pieces of jewelry and pawned them, without Hannah's permission. These actions alone constituted a trespassory taking and thus permitted the trier of fact, absent countervailing evidence, to draw an inference that Lindow intended to permanently deprive Hannah of the jewelry. See id. at 685. Lindow argues that such countervailing evidence exists because she retrieved the jewelry from the pawn shop and returned the pawned items to Hannah's mailbox. Lindow relies on Carter, in which the Supreme Court of Virginia held that when a defendant takes the property of another with the intent to use it temporarily and return it within a reasonable time, she generally lacks the intent to commit larceny. 280 Va. at 107 (citing 3 Wayne R. LaFave, Substantive Criminal Law § 19.5(b), at 89 (2d ed. 2003)). We disagree that the holding in Carter applies to the facts in this case, viewed in the light most favorable to the Commonwealth.

At trial, Lindow, a convicted felon, testified that she believed that Hannah had loaned Christopher the jewelry to be pawned for gas money. Not only did that testimony contradict Hannah's account, but it also contradicted Lindow's prior statement to Deputy White, which omitted any reference to a loan. The trial court recognized these inconsistencies and found Lindow's testimony lacked credibility. See Dalton v. Commonwealth, 64 Va. App. 512, 525 (2015) ("Determining the credibility of witnesses . . . is within the exclusive province of the jury, which has the unique opportunity to observe the demeanor of the witnesses as they testify." (quoting Lea v. Commonwealth, 16 Va. App. 300, 304 (1993))). Indeed, as the fact-finder, the court "was at liberty to discount [Lindow's] self-serving statements as little more than lying to conceal [her] guilt[] . . . , and could treat such prevarications *as affirmative evidence of guilt*." Coleman v. Commonwealth, 52 Va. App. 19, 25 (2008) (emphasis added) (internal quotations and citations omitted).

The trial court's determination that Lindow's evolving explanation lacked credibility discredited any countervailing evidence Lindow presented at trial. Lindow thus failed to rebut the inference that her trespassory taking was accomplished with the intent to permanently deprive Hannah of the jewelry. In fact, Lindow's inconsistent explanations provided affirmative evidence of her guilt. Accordingly, the facts and circumstances of this case, including both Lindow's actions and her prior inconsistent statement to Deputy White, when viewed in the light most favorable to the Commonwealth, were sufficient to prove that Lindow took the jewelry with the intent to permanently deprive Hannah of the stolen items. Thus, the trial court did not err in holding that the evidence was sufficient to convict Lindow of grand larceny.

## III. CONCLUSION

For these reasons, we affirm the decision of the trial court.

<u>Affirmed.</u>